Judge Éwing
delivered the Opinion of the Court.
Quintín Stewart, in his .lifetime, executed, to Samuel Pyle, a bill of sale for a negro woman and child, on the -23d of September, 1822, for -and in consideration of three hundred dollars, and delivered to him the possession, and took from him an instrument of writing, reserving the right to redeem whenever he -should refund the com ■sideration.
Pylé died, and administration was granted to-his wife, Unice F-. Pyle, who afterwards intermarried with Benjamin Harrison»
Stewart died, and administration on his estate was granted to John Spurlin.
An execution was levied on the equity of redemption ■of said Stewart, in the hands of his administrator, and the same wás sold, and Pennington became the purchaser; and, at the same time, but immediately thereafter, a sale was made of the interest of said Pyle, in the hands of his administrators, by virtue of a levy made on thé same, under an execution against his estate, and said Pennington also became the purchaser, for about twenty five dollars, having full knowledge of all the circumstances attending their possession of the slaves, and took possession of them-.
Harrison and wife filed their bill, as administrator ’and administratrix of Pyle, against Pennington and Spurlin, with a restraining order, and pray that the sale to the former may be set aside, and the said slaves be sold, to refund to them the amount advanced for said slaves*.
Pennington answered, admitting the facts éhariged; but says, that the sum originally advanced was in Com *530 monweaifh’s paper, and alleges, by a subsequent answer, which he makes a cross bill against Spurlin, that he had purchased out from him, all the interest of Stewart’s estate to said slaves; which was answered, and confessed by Spurlin, who also answered the bill of Harrison and wife, confessing the facts charged, and also stating that the three hundred dollars was paid in Commonwealth’s paper.
'DecreeoftheCir•cuit Court.
Upon a bill for a sale of inortgagedslaves,topay the debt — a deft who stands in the place of a mortgagor, charges, by answer and cross bill, that the sum secured by the mortgage, was advanced, in depreciated bank paper; but the proof of that fact is slight, and there is no charge of intentional usury, fraud or mistake in the pleadings, andno facts proved from which either can be inferred: decree for the full sum in specie, sustained.
A decree, on a bill to have slaves sold to pay the debt for which they were mortgaged„should as- ■ certain the- amount of inter-of t^loan^to" the day of the-ofC1the * hire*1 of the slaves while gee, and the'dif'fy611013 between those two sums, should be deducded toTthe°principal; the bal(orparty'standing in his place) red'ttfpay'^y a day certain; and. piy) tiie siave3. should be soldi ney ^c.
*530 The Circuit Court decreed a rescission of the sale of the mortgagee’s interest, and decreed, that Pennington, pay to the complainants, the sum of three hundred dollars, with interest thereon, from the 23d of September, T'822, till paid — -subject to a credit of one hundred and sixty eight dollars sixty six and two third cents, allowed ’for the hire of the slaves; and that the slaves be sold to ’pay the same. From which decree, the defendants have Appealed to this Court.
' There is slight parol testimony tending to show, that' the money Was -advanced in Commonwealth’s paper. But there is no charge made in the answers, of usury, or fraud or mistake. Nor are there any facts charged, from which the Court may infer usury, or fraud, in the continued possession of the slaves for more than five years, or otherwise. The parol testimony contradicting the writings, is, therefore, insufficient; and the Circuit Court did not err in refusing to decree Commonwealth’s paper, or in setting aside the pretended sale of Pyle’s interest in the slaves. The Use of the money advanced was at least equal to the hire of the woman with her incumbrance, at the time when the contract was made, whether the advancement was made in Commonwealth’s paper, or specie, and therefore riot usurious. And the purchase by Pennington was not -of. the absolute property of Pyle in the slaves, but only of his interest as mortgagee, which was not subject to sale.
In relation' to the hire of the slaves, though it did not exceed in value the interest of the money at the time of the contract, and perhaps for some years afterwards, while the incumbrance of a young child continued, yetf On an-average for the whole time that they remained in *531 Pyle’s possession, their hire did exceed the interest,, and the excess should go-to wards extinguishing the mortgage debt. ’ v
It is extremely difficult to come to a proper conclusion, as to the value of the hire, amid the contrariety of evidence on this subject. But we incline to think the CircuitCourt, infixing on the sum of twenty dollars a year, was below what is right.
We think that, on a scrutinizing comparison of all the testimony, that twenty two dollars and fifty cents a a year, would approach nearer the medium standard; which, from the commissioner’s report, will amount to tit i-i ■ i ii <• • „ ■one hundred and eighty nine dollars forty six cents lor the whole period the slaves remained in the mortgagee’s possession, and about twenty four dollars more than the amount allowed by the Circuit Court.
The Circuit Court should estimate the interest on the three hundred dollars, from the date of the bill of sale, up to the rendition the decree, and after deducting the said sum for hire-, from the same, decree that rennmgton pay the aggregate amount of the balance and costs; and upon his failure* — the sale of the said slaves..
It is therefore the opinion of this Court, that the decree of the Circuit Court be reversed, and the cause remanded, that a decree be rendered not inconsistent with this opinion.